IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STARSHA MONET SEWELL
                                :

    v.                             :    Civil Action No. DKC 12-2927

STRAYER UNIVERSITY
                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is Defendant Strayer University's ("Defendant" or "Strayer") motion to strike and dismiss with prejudice an amended complaint filed by *pro se* Plaintiff Starsha Monet Sewell ("Plaintiff" or "Ms. Sewell"). (ECF No. 29). Also pending are two motions filed by Plaintiff to dismiss both Defendant's motion to strike (ECF No. 33), and Defendant's request for sanctions in the motion to dismiss (ECF No. 34). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion will be granted and Plaintiff's motions will be denied as moot.

## I. Background

On October 2, 2012, Plaintiff filed a complaint against Strayer, asserting claims of race-, color-, and gender-based discrimination and retaliation under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as claims for race-based discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981"). (ECF No. 1). Defendant subsequently moved to dismiss Plaintiff's complaint and a memorandum opinion and order issued on July 9, 2013. (ECF No. 25). The relevant facts as alleged in Plaintiff's complaint are described in the prior opinion, but a brief background of the underlying factual and procedural issues in the case is necessary.

Strayer hired Plaintiff in February of 2006 to serve as a Quality Assurance Specialist for a salary of $50,000 per year. (ECF No. 27, at 2).[1] Additionally, Plaintiff was hired to teach classes as a part-time member of the adjunct faculty, for which she was compensated an additional $18,000 per year. (*Id.*). Plaintiff was promoted to the role of Associate Campus Dean in September of 2007 for an annual salary of $60,000 and continued to teach classes as a part-time adjunct faculty member. Plaintiff earned a combined annual salary of $78,000 for both positions. (*Id.*). Kelley Justice ("Ms. Justice") directly supervised Plaintiff in her role as Associate Campus Dean. (*Id. at 3*).

---

[1] Plaintiff asserts that her salary increased to $52,800 after her one year performance review.

In October 2007, Ms. Sewell filed an internal complaint of racial and age discrimination against Ms. Justice alleging that Ms. Justice subjected her to a hostile work environment because of her race.  On November 21, 2007, Plaintiff received a letter from Debora Clark, an employee relations manager at Strayer, which provided that "[a]fter thoroughly reviewing information provided by you as well as conducting further interviews, Strayer is unable to substantiate your claim that Dean Justice discriminated against you or violated Strayer's Policy regarding, 'Other Forms of Illegal Harassment.'  Notably, you did not provide any specific examples of conduct or statements indicating racial or age-based animus." (ECF No. 27-8, at 1).[2]

Plaintiff asserts that she was then "financially demoted" in March 2008 because Ms. Justice instructed Strayer's human resources department to stop compensating Ms. Sewell for her position as an adjunct part-time professor.  This reduced

_____

[2] The letter also addressed Plaintiff's subsequent October 31, 2007 email alleging that Dean Justice retaliated against her for filing the October 2007 complaint.  Ms. Clark stated that:

> [Plaintiff's] version of the conversation with Dean Justice on October 30, 2007, is quite different from Dean Justice's version; therefore we were unable to corroborate your claim of retaliation.  Nevertheless, Dean Justice has been counseled about employees always having the right to contact the Human Resource Department with concerns.

(ECF No. 27-8, at 1).

Plaintiff's salary to $60,000 and allegedly breached her contract with Strayer to teach as an adjunct professor.

On August 5, 2009, Ms. Sewell filed a charge of discrimination ("the August 2009 Charge") with the Office of Human Rights & Equity Programs, Human Rights Division, for Fairfax County, Virginia ("the FCHRC"). (ECF No. 10, at 3). In the August 5, 2009 Charge, Plaintiff alleged that Strayer retaliated against her for filing an internal complaint of discrimination against Ms. Justice in October 2007 and for filing a discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC") on March 25, 2008. Ms. Sewell cited the following events as examples of the purported retaliation: (1) her August 18, 2008 termination from Strayer after she returned from medical leave; (2) her belief that, beginning in August 2008, Strayer provided negative references to other prospective employers; and (3) the refusal of Ms. Deepali-Kala, Strayer's director of quality assurance, to provide Ms. Sewell with a reference in July 2009.

The July 9, 2013 memorandum opinion and order dismissed for lack of subject matter jurisdiction Ms. Sewell's Title VII claims of race-, color-, and gender-based discrimination because she failed to exhaust her administrative remedies as to those claims because she failed to include them in the August 2009 Charge. The opinion noted that even if the court had subject

matter jurisdiction over Plaintiff's Title VII discrimination claims, such claims would be dismissed for two additional reasons. First, Plaintiff failed to respond to Strayer's substantive arguments regarding the factual allegations supporting her Title VII discrimination claims, and thus abandoned such claims. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 & 783 (D.Md. 2010). Second, Ms. Sewell's complaint was devoid of any factual allegations supporting a plausible claim of intentional discrimination. (*See* ECF No. 25, at 18-19 n.9).

Although the court found that there was subject matter jurisdiction over Plaintiff's Title VII retaliation claim – which she alleged in the August 2009 Charge – the complaint clearly revealed that the allegations relating to Ms. Sewell's August 2008 termination and Strayer's provision of negative references in August 2008 were time-barred because these acts preceded the August 2009 Charge by more than 300 days. (*Id.* at 23); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626 (d)(1)(B).[3] Accordingly, Ms. Sewell's Title VII retaliation claim, to the extent it relied on either of these two discrete acts, was dismissed with prejudice.

---

[3] In deferral states such as Maryland, an employee has 300 days in which to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5.

Notably, the court assumed the truth of Plaintiff's allegation that she filed an earlier complaint with EEOC on March 25, 2008, and found it plausible that Ms. Sewell filed a timely administrative complaint with respect to the March 2008 "financial demotion." Ms. Sewell maintained in her opposition to Defendant's motion that a causal connection existed between the October 2007 charge and the alleged March 2008 demotion because Ms. Justice "retaliated against Sewell at the first opportunity that she had, upon Sewell's return to work from her medical leave absence." (ECF No. 14, at 3). The undersigned noted that Ms. Sewell's complaint was deficient insofar as it did not include any allegations that Ms. Sewell was on medical leave for some or all of the five-month period at issue here. Thus, the Plaintiff's retaliation claim, relying on the March 2008 "financial demotion," was dismissed without prejudice to her right to file an amended complaint within twenty-one (21) days. The opinion provided that:

> [i]f Ms. Sewell files an amended retaliation claim, she *must* include additional allegations regarding the causal connection between her October 2007 complaint and her March 2008 demotion, including but not limited to the allegations about (1) the timing and nature of any medical leave Ms. Sewell took during this period; and (2) if and when Ms. Justice learned about Ms. Sewell's October 2007 complaint of discrimination.

(ECF No. 25, at 28) (emphasis added).  Plaintiff's Section 1981 claims were dismissed as untimely.[4]

Plaintiff filed an amended complaint on July 24, 2013, which included twenty-three (23) exhibits.  (ECF No. 27).  One of the exhibits is a "memorandum in support of the Plaintiff's amended complaint regarding EEOC timing requirement."  (ECF No. 27-18).  On August 12, 2012, Defendant moved to strike Plaintiff's amended complaint to the extent it includes claims and allegations previously dismissed with prejudice and also moved to dismiss her complaint for failure to state a claim.  (ECF No. 29).  Plaintiff filed an opposition on August 14, 2013 (ECF No. 31), and Defendant replied on September 3, 2013 (ECF No. 32).  Plaintiff then moved to dismiss Defendant's motion to strike on September 23, 2013 (ECF No. 33) and, on the same day, filed a motion to dismiss Defendant's motion to strike "along with a motion to dismiss the opposing counsel's request for sanctions" (ECF No. 34).  Defendant opposed this motion on September 27, 2013 (ECF No. 35), and Plaintiff did not reply.

---

[4] The July 9, 2013 memorandum opinion noted that Plaintiff abandoned her Section 1981 claims to the extent Plaintiff relied on Strayer's alleged refusal to provide her a reference for other employment in June 2009.  (ECF No. 25, at 31).

## II.  Analysis

### A.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S.

at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.   Plaintiff's Amended Complaint**

Defendant again argues that the retaliation claim premised on the March 2008 demotion is untimely because it occurred more than 300 days before Plaintiff's August 2009 Charge and Plaintiff has not put forth evidence showing that she timely filed an administrative charge with EEOC in March 2008. Defendant ignores the court's holding in the July 9, 2013 opinion that dismissal on Rule 12(b)(6) is appropriate only to the extent that "the face of the complaint clearly reveals that Ms. Sewell's claims are time barred," (ECF No. 25, at 23), and here it is plausible that Plaintiff filed a timely administrative complaint given the reference to the March 2008 EEOC complaint in the August 2009 Charge.[5]   Thus, Defendant's statute of limitations defense is again unavailing with respect to the March 2008 "financial demotion."[6]

----

[5] The opinion also noted that "[a]lthough Ms. Sewell has not provided any documentary evidence confirming that she filed a formal or informal charge with the EEOC on March 25, 2008, she is not obligated to do so at [the motion to dismiss] stage." (ECF No. 25, at 22).

[6] Plaintiff includes as an exhibit to the amended complaint a "memorandum in support of the Plaintiff's amended complaint regarding EEOC timing requirement" and several exhibits in support thereof. (*See* ECF Nos. 27-18 to 27-23).   Plaintiff

Nevertheless, Plaintiff does attempt to re-litigate claims previously dismissed for procedural deficiencies. For instance, Plaintiff alleges in the amended complaint that Strayer took an adverse employment action on September 4, 2008 by officially terminating her from the adjunct faculty position. Because this alleged discrete act occurred more than 300 days before the filing of the August 2009 Charge (and logically could not have been included in the March 2008 EEOC charge), Plaintiff cannot rely on the September 4, 2008 termination to support the retaliation claim as it is time-barred. Similarly, Plaintiff again alleges in the amended complaint that Defendant retaliated against her by providing "poor references to the Plaintiff's employers following her termination, specifically Tesst College (Greenbelt, MD), and Vatterott College (St. Louis, MO)." (ECF No. 27, at 3). Plaintiff submits a final investigative report which includes an affidavit from Andrea M. DeGraffenreidt with

---

argues that she is "entitled to relief pursuant to the 'equitable tolling' of the Title VII's 300-day timing requirement for her March 2008 complaint" because she allegedly met the informal filing requirement upon completing an intake questionnaire and by filing a formal charge of discrimination in March of 2008." (ECF No. 27-18, at 2). As stated in the July 9, 2013 memorandum opinion, the face of the complaint did *not* clearly reveal that the March 2008 "financial demotion" claim was time-barred; thus, it was found plausible that Ms. Sewell filed a timely administrative complaint with respect to the March 2008 "financial demotion." (*See* ECF No. 25, at 22). Accordingly, Plaintiff's request equitably to toll the 300-day filing requirement related to the March 2008 EEOC charge is moot.

Strayer University, who provides that she responded to a reference request for Ms. Sewell in June 2009. (*See* ECF No. 27-10). As indicated in the July 9, 2013 opinion, Ms. Sewell's Title VII retaliation claim was dismissed with prejudice to the extent she relied on the June 2009 discrete act because she abandoned this claim by failing to address it in the reply brief. (ECF No. 25, at 25). The court specifically noted: "Ms. Sewell fails to respond to Strayer's arguments regarding the dearth of allegations indicating that this event is causally connected to her protected activity. Ms. Sewell therefore has abandoned her Section 1981 claims to the extent it relies on Strayer's refusal to provide her with a reference in June 2009." (*Id.* at 31). Thus, Plaintiff is precluded from re-alleging in the amended complaint the same claims previously dismissed with prejudice.

Defendant argues that Plaintiff's retaliation claim relying on the March 2008 "financial demotion" is subject to dismissal because the amended complaint still fails to allege facts to establish the necessary causal connection between protected activity in 2007 and the March 2008 demotion. (*See* ECF No. 29-1, at 6). Defendant contends that "[d]espite specific instruction from the Court, Plaintiff did not assert any factual allegations that transform her retaliation claim into a plausible claim for relief. Rather, she merely makes vague

statements that she was financially demoted 'as soon as she returned from leave.'" (*Id.* (*quoting* Plaintiff's amended complaint)).[7]

Defendant is correct that Plaintiff's amended complaint does not specifically address the timing and nature of any medical leave Ms. Sewell took between the October 2007 grievance and March 2008 financial demotion, nor does Ms. Sewell include if and when Ms. Justice became aware of the protected activity. Instead, Plaintiff states that "Kelley Justice financially demoted the plaintiff, immediately upon her return to work from FMLA medical leave, because Ms. Sewell engaged in protected activity on October 2007" and that "Ms. Sewell was financially demoted as soon as she returned to work from leave." (ECF No. 27, at 6). A review of the record, however, sheds some light into Plaintiff's periods of leave from Strayer.[8] As mentioned above, Plaintiff submits twenty-three exhibits with her amended

---

[7] To establish a *prima facie* retaliation claim, a plaintiff must show that: (1) she engaged in a protected activity, (2) her employer acted adversely against her, and (3) the protected activity was causally connected to the adverse action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

[8] In deciding a motion to dismiss, a court may consider matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint. *Norfolk Federation of Business Districts v. City of Norfolk*, 103 F.3d 119 (Table), 1996 WL 671293, at *1 (4th Cir. Nov. 20, 1996) (unpublished opinion); *Alamria v. Telcor Intern., Inc.*, 920 F.Supp.2d 658, 668 n.10 (D.Md. 1996). Thus, the twenty-three (23) exhibits Plaintiff submits with the amended complaint are properly considered.

complaint, including an email from Sondra Stallard ("Dr. Stallard"), Strayer's president, dated March 25, 2008, in response to Plaintiff's October 2007 grievance and additional follow-up, in which Dr. Stallard notes:

> Concerning other issues we discussed during your grievance meeting on January 3, 2008 . . . an action plan was developed to address your myriad concerns. However, we could not implement that plan *due to your absence from work between the date of our meeting and March 3, 2008*.

(ECF No. 27-13, at 1) (emphasis added). Plaintiff also includes as an exhibit a document, dated January 15, 2010, which Ms. Sewell appears to have submitted as part of the administrative process in connection with the August 2009 Charge. In this document, Ms. Sewell states that she "experienced some health challenges from [her] pregnancy and from a motor vehicle accident that [she] was involved in concurrently . . . my use of medical leave was necessary and legally supported by licensed physicians." (ECF No. 27-9, at 3). Furthermore, an EEOC decision on Plaintiff's reconsideration request reveals that Strayer certified Ms. Sewell's leave from December 31, 2007 to March 3, 2008, with a return to work date of March 4, 2008. (ECF No. 18-3, at 1).[9] The EEOC reconsideration decision further

---

[9] The EEOC's decision on Plaintiff's reconsideration request is subject to judicial notice. *See, e.g., Muhammad v. N.Y. City Transit Auth.*, 450 F.Supp.2d 198, 204 (E.D.N.Y. 2006) (finding that an EEOC charge of discrimination and the agency's

provides that Ms. Sewell "briefly returned to work on March 4, 2008 but was absent again starting March 26, 2008." (*Id.*). Thus, based on the record, it appears that Ms. Sewell was on leave from either December 31, 2012 or January 4, 2013 until March 4, 2008, due to injuries from a motor vehicle accident and/or pregnancy complications. Ms. Sewell also appears to allege that she suffered the adverse employment action (*i.e.,* "financial demotion") "as soon as she returned to work from leave," presumably March 4, 2008. (ECF No. 27, at 6).[10]

The United States Court of Appeals for the Fourth Circuit has held that "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). "[T]he employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case." *Id.* Nowhere in the amended complaint, however, does Plaintiff address the second part of the court's directive regarding if

---

determination are both public records, of which this Court may take judicial notice").

[10] Plaintiff wrote to Dr. Stallard in an email dated March 4, 2008 that "Dean Lee and Dean Justice are trying to decrease my salary indicating that I should not have, and should no longer receive compensation for teaching classes." (ECF No. 27-12, at 3).

and when Ms. Justice learned about Ms. Sewell's October 2007 complaint of discrimination. A review of the record again provides some – albeit minimal – insight on this point. Specifically, the November 21, 2007 letter from Ms. Clark dismissing the October 2007 grievance suggests that Ms. Justice learned of Plaintiff's grievance by that point. The November 21, 2007 letter from Ms. Clark to Ms. Sewell provides:

> Notably, you [Ms. Sewell] did not provide any specific examples of conduct or statements indicating racial or age-based animus. At most, you described Dean Justice's failure to effectively delegate job duties, less than optimal communication skills and a lack of understanding of how her management style is perceived . . . Senior management is working closely with Dean Justice to develop her managerial skills.

(ECF No. 27-8, at 1). The letter further references Plaintiff's October 31, 2007 email alleging that Ms. Justice retaliated against her for filing the grievance. Ms. Clark explains that Plaintiff's account of a conversation she allegedly had with Ms. Justice differed from Ms. Justice's version. The letter further provides that "Dean Justice has been counseled about employees always having the right to contact the Human Resource Department with concerns. Moreover, she was counseled about how her management style is perceived by her staff and how she can progress in her management capabilities." (ECF No. 27-8, at 1). Taking a liberal reading of *pro se* Plaintiff's amended

complaint, this at least implies that Ms. Justice learned about the October 2007 internal grievance by November 21, 2007.

The record reflects, however, that Plaintiff filed the internal grievance in October 2007, did not take leave until December 31, 2007 or January 4, 2008, and alleged that Ms. Justice attempted to stop her salary for the adjunct faculty position on or about March 4, 2008. Thus, Plaintiff fails to establish how the "financial demotion" took place at Defendant's "first opportunity," given that Plaintiff remained at work at least until December 31, 2007 following the October 2007 internal grievance and Ms. Justice learned of the protected activity by November 21, 2007. Plaintiff repeatedly cites two extra-jurisdictional cases to support that "the causal connection still exists because the complainant was on leave during the five (5) month period," but those cases are readily distinguishable. For instance, the plaintiff in *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205 (10th Cir. 2003), established a causal connection between her complaint and internal grievance submitted in November 1995, and her transfer and reassignment in April 1996 based on the following facts:

> In November 1995, two days after she filed her CEEO complaint and *the day she filed her internal grievance, Plaintiff went on medical leave*. She returned to work for five days in December, but then went back on leave until Mr. Moston told her to return to work in April 1996. Seven days after her

16

> return – five months after her complaints –
> Plaintiff was transferred to Grant Junction
> and immediately reassigned to the traffic
> section.

325 F.3d at 1216-17 (emphasis added). The court observed that "[a] five-month gap between a protected activity and an adverse action would ordinarily be too great a time lapse to support an inference of causation based on timing alone," but because plaintiff in that case was on leave "during most of the time between her filing the CEEO complaint and grievance, and her transfer and reassignment," the court found a causal connection. *Id.* at 1217. Similarly, in *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426 (2$^d$ Cir. 1999), the other case on which Plaintiff relies, the court found that "because the transfer and reassignment were the first actions that [defendant] took after [plaintiff] returned from the leave on which she filed her EEOC charge, there was sufficient evidence that the transfer and reassignment were causally related to [plaintiff's] engagement in protected activity." 180 F.3d at 444.

Here, Plaintiff has not shown, or even alleged, that she was on leave for most of the time between the protected activity in October 2007 and the March 2008 "financial demotion." *Cf. Templeton v. First Tennessee Bank, N.A.*, 424 F. App'x 249, 251 (4th Cir. 2011) (finding two year lapse sufficient where

plaintiff resigned after complaining of discrimination but sought to be rehired two years later); *cf. Thurson v. Am. Press, LLC,* 497 F.Supp.2d 778, 783 (W.D.Va. 2006) (plaintiff not selected for a position almost immediately after discussing his EEOC history during an interview). In fact, the record reflects that Ms. Justice did not "financially demote" Plaintiff at the first opportunity after the October 2007 grievance. *Cf. Ford v. General Motors Corp.,* 335 F.3d 545, 552 (6th Cir. 2002) (finding a causal connection where for a five-month period following his EEOC filing, the plaintiff voluntarily worked in a different position and was not within his supervisor's sphere of authority, but when the plaintiff was placed back under his supervisor's direction, the supervisor subjected his performance to heightened scrutiny and threatened to terminate him). Ms. Sewell offers nothing to suggest a causal connection other than self-serving conclusory averments. Specifically, she asserts a legal conclusion in the amended complaint without any factual support:

> [t]here is a causal connection between the date for the protected activity that the plaintiff engaged in on October 2007 (Complaint regarding racial discrimination of Kelley Justice), and on March 17, 2008 (appeal of Kelly's retaliatory salary decrease of which the University President Sandra Stallard affirmed (Exhibit 10); and March 25, 2008 Dispute of reduction of salary.

(ECF No. 27, at 4).  To the extent Plaintiff attempts to argue

that the protected activity continued through her "appeal" of

the November 21, 2007 decision to Dr. Stallard in March 2008,

such argument is unavailing because Plaintiff alleges *nothing* to

show that Ms. Justice knew about this appeal.[11]  *See Finnegan v.*

*Dep't of Pub. Safety & Corr. Servs.*, 184 F.Supp.2d 457, 463

(D.Md. 2002) ("a plaintiff must establish that when taking the

adverse action, an employer had knowledge that the plaintiff had

engaged in protected activity."); *Dowe v. Total Action Against*

*Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)

("[s]ince, by definition, an employer cannot take action because

---

[11] Based on the record, it appears that Ms. Sewell met with
Dr. Stallard on January 3, 2008 "regarding issues experienced at
the Online Campus, Newington, VA with Kelley Justice." (ECF No.
27-12, at 3 (email from Ms. Sewell to Dr. Stallard)).  She then
sent an email, dated March 4, 2008, to Dr. Stallard following up
on the January 3, 2008 meeting and requesting Dr. Stallard's
assistance because "Kelley conveyed [on March 4, 2008] that she
informed the Payroll department that [Ms. Sewell] should not be
compensated for teaching classes." (*Id.*).  After Dr. Stallard
responded on March 10, 2008 that Strayer is looking into Ms.
Sewell's concerns, Plaintiff again emailed on March 17, 2008
stating that "[w]e are vastly approaching the start of the
Spring Quarter and I hope that we can get this payroll issue
resolved prior." (*Id.* at 2).  On March 25, 2008, Dr. Stallard
responded to Ms. Sewell, explaining that she could not be
compensated for the adjunct faculty position because her
promotion to Associate Campus Dean required her to teach two
classes for which she would not be separately compensated. (ECF
No. 27-13, at 1).  Dr. Stallard further stated that with respect
to the grievance meeting on January 3, 2008, "an action plan was
developed to address [Ms. Sewell's] myriad concerns.  However,
we could not implement that plan due to [Ms. Sewell's] absence
from work between the date of our meeting and March 3, 2008."
(*Id.*).  None of these exchanges suggest that Ms. Justice knew
about the pending appeal.

19

of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). Given the five-month time-span between the protected activity and the March 2008 "financial demotion" and Plaintiff's failure to allege plausible facts reasonably to infer that the adverse action was taken at the "first opportunity," Ms. Sewell's retaliation claim will be dismissed with prejudice.

Plaintiff also newly alleges in the amended complaint that "[o]n March 25, 2008, Dr. Stallard retaliated against Sewell for electronically documenting her violation of University policy. The adverse employment action is displayed in [Dr. Stallard's] decision to uphold the financial demotion that Kelley Justice and Suk Lee requested, upon Sewell's initial return to work from FMLA medical leave, because Ms. Sewell engaged in protected activity." (ECF No. 27, at 7). To the extent Plaintiff relies on the fact that Dr. Stallard violated university policy by failing to respond to her March 4, 2008 email within fifteen (15) days and subsequently retaliated against her for documenting this violation, this does not constitute protected activity under Title VII and thus Plaintiff fails to establish a *prima facie* retaliation claim based on this discrete act. Plaintiff further argues that Dr. Stallard subsequently affirmed the "financial demotion," which Plaintiff believes to be "direct

20

evidence that the President . . . retaliated against [her] for engaging in protected activity via Strayer University['s] 'Personnel Conflict/grievance' appeals process." (*Id.* at 6). Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal quotation marks omitted). Plaintiff includes no factual support, beyond conclusory statements, that by affirming the "financial demotion," Dr. Stallard retaliated against her for engaging in the University's appeals process. *See Brightwell v. Hershberger*, Civil Action No. DKC-11-3278, 2013 WL 709784, at *9 (D.Md. Feb. 26, 2013) ("[a] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone" (*quoting Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987))); *Pierce v. King*, 918 F.Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Accordingly, Plaintiff's allegation that Dr. Stallard retaliated against her is likewise insufficient to plead a *prima facie* case. *See, e.g., Agolli v. Office Depot, Inc.*, No. 12-2458, 2013 WL 6645448, at *5 (4th Cir. Dec. 18, 2013) (noting that while *pro se* EEOC claimants are entitled to a substantial amount of indulgence, "alleging the same speculative

and conclusory claims, . . . cannot survive Rule 8(a)(2) scrutiny.").

C. **Plaintiff's motions**

Because Plaintiff's amended complaint will be dismissed entirely, Plaintiff's motion to dismiss the Defendant's motion to strike portions of her amended complaint, (*see* ECF No. 33), will be denied as moot. In the motion to dismiss, Defendant requests "relief as the Court may deem appropriate, including sanctions for Plaintiff's efforts to re-litigate dismissed claims." (ECF No. 29-1, at 8). Plaintiff moved to dismiss this request for sanctions. (*See* ECF No. 34). Plaintiff's litigation behavior does not rise to the level of abusive and vexatious conduct that warrants sanctioning. *Cf. Kalos v. Centennial Sur. Assocs., Inc.*, No. CCB-12-1532, 2012 WL 6210117, at *4 (D.Md. Dec. 12, 2012) (finding Rule 11 sanctions appropriate where plaintiff brought over a dozen cases against the defendants or related parties on frivolous grounds). Accordingly, the court will not impose sanctions at this time and Plaintiff's motion (ECF No. 34) will be denied as moot.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's amended complaint will be granted. Plaintiff's motions will be denied as moot. A separate order will follow.

/s/

DEBORAH K. CHASANOW
United States District Judge